McQuiston et al. *versus* Central Board of Education.

It was provided by the Act of February 12th 1869, that the treasurer of the Central Board of Education of Pittsburgh should receive for his services one per centum on the money received and paid out by him. By a supplement of February 24th 1870, the treasurer was to be chosen from among the banks of said city, and that one chosen which should give satisfactory security and pay the highest rate of interest on current balances. A bank so selected agreed to pay 6⅜ per cent. interest on daily balances, and to charge 8 per cent. on over-drafts. *Held*, that this contract was authorized by the Act of Assembly and was therefore binding. *Held, further*, that the bank was not entitled to the commission allowed to the treasurer under the Act of 1869.

November 7th 1878. Before AGNEW, C. J., SHARSWOOD, MERCUR, ·GORDON, PAXSON and TRUNKEY, JJ. WOODWARD, J., absent.

Error to the Court of Common Pleas, No. 1, of *Allegheny county :* Of October and November Term 1878, No. 116.

Debt by the Central Board of Education of the City of Pittsburgh against James McQuiston and others, sureties on the bond of the Tenth Ward Bank, to recover a balance, with interest, which the plaintiff alleged was due by the bank, as the depositary or treasurer of the board.

A case was stated, for the opinion of the court, wherein it appeared that the bank was made the depositary or treasurer of the board, under the provisions of the Act of February 24th 1870, Pamph. L. 231, and contracted to pay 6⅞ per cent. interest on daily balances, and to charge 8 per cent. on over-drafts. The Act of 1870 provided, inter alia, that the Board of Education should select from the several banks a treasurer or place of deposit, which should give bond, with sufficient sureties, and pay for the use of the school fund the highest rate of interest on current balances. This Act of 1870 was the supplement to the Act of February 12th 1869, Pamph. L. 967, wherein it was, inter alia, provided that the Board of Education should annually choose a treasurer, who should be allowed to retain for his services a sum not exceeding one per centum on the money received and paid out by him.

The bank having, at the end of the second year, ceased to act as depositary for the plaintiff, the present suit was brought to recover from the defendants a balance of $2518.02, alleged by the plaintiffs to be due and payable to it by said bank, on settlement of a final account, with interest from June 1st 1874.

The defendants denied this indebtedness, for the following reasons :

1. That by the 10th section of the Act of February 12th 1869 (which remains unrepealed), unless the court should be ʾof opinion that the Act of February 24th 1870, repeals the same, said bank, as treasurer of the Central Board, was entitled to receive a commission not exceeding one per cent., as set out and provided in

[McQuiston *v.* Central Board of Education.]

section 10 of said Act of February 12th 1869, on all moneys that passed through its hands as depositary, under the contract made with the plaintiff; and

2. That the contract made by the plaintiff with the bank was usurious and cannot be enforced as to the excessive interest.

The court, Stowe, P. J., in an opinion, said:

"The questions raised by the case stated are:—

"1. Whether plaintiff, under the supplement to the Act of 12th of February 1869, approved the 24th of February 1870, has a right to make a valid contract with the Tenth Ward Bank, for which the defendants are sued in this case as sureties for the payment of a greater interest than 6 per cent., for the privilege of acting as treasurer or depositary for the plaintiff.

"2. Whether the provision in said Act of 12th of February 1869, 'that the treasurer shall be allowed to retain for his services (as such) a sum not exceeding one per cent. on the money received by him,' is repealed by said supplement.

"Upon the first question, we are clear that the agreement for more than 6 per cent., to wit, as set out in case stated, was valid and legal.

"As to the second, we are not free from doubt, but thinking that the general intent of the legislature in passing the said supplement was to change the entire system as it had existed in regard to the treasurer for the school board, and that the purpose was to enable the board to obtain a compensation for allowing one to be treasurer instead of compelling them to pay for the services of a treasurer, as before provided, we are upon the whole led to conclude that the second question should also be decided in favor of the plaintiff.

"Judgment is, therefore, now directed to be entered for plaintiff for $2518.02, with interest from June 1st 1874, to wit, $3106.45."

The defendant assigned this entry of judgment for error.

*J. L. Koethen* and *M. A. Woodward,* for plaintiffs in error. —It is not to be assumed that the legislature intended to make an exception to the operation of the usury laws. It could not have been contemplated that over six per cent., or six per cent., could be honestly bid for the school fund, for the reason that the bidders could not themselves lawfully obtain over that amount; and to pay that amount on a daily balance, subject to daily fluctuations, would be suicidal. It is not to be assumed that violation of law was to be encouraged by legislation. The Act of 1870 is supplementary, and not referring to the compensation allowed under the Act of 1869, and not having anything in it positively inconsistent with that, it would be a great straining of any known rule of interpretation to say that that clause of the Act of 1869 was repealed by the Act of 1870.

[McQuiston *v.* Central Board of Education.]

*Josiah Cohen,* for defendant in error.—The power to take more than legal interest was a legislative grant in aid of that cause which lies nearest the best interests of the state—the education of its youth. It was a power specially delegated for a special purpose, and one which proved far more beneficial, in this instance, to the bank which took eight per cent. than to the board, which only received $6\frac{7}{8}$ per cent.

It would certainly appear to be subversive of all known rules of interpretation to hold that these two Acts of Assembly can stand together, or that the commission clause of the Act of 1869 can stand with the provisions of the Act of 1870, when the very essence of distinction in the Act of 1869, as applied to the Act of 1870, is the granting of a commission to the treasurer for his services, which was sought to be, and evidently was, repealed, and made inconsistent with the language, purpose and intent of the Act of 1870.

Mr. Justice PAXSON delivered the opinion of the court, January 6th 1879.

It was provided by the 10th section of the Act of 12th February 1869, Pamph. L. 967, that the treasurer of the Central Board of Education of the city of Pittsburgh, "shall be allowed to retain for his services a sum not exceeding one per centum on the money received and paid out by him." The supplement to the foregoing act, approved February 24th 1870, Pamph. L. 231, makes a change in this respect, and provides a system by which the custody of the school fund should be made a source of profit to the board. The first section of the supplement requires that the treasurer shall be selected from the several banks or regular exchange brokers of the city of Pittsburgh; directs the board to invite sealed proposals from such banks and brokers to act as the treasurer or depositary of said school fund, whereupon the "selection shall be made upon the opening of said proposals of the bank or exchange brokers who shall give satisfactory security by at least four sureties by bond to be approved by said board, and shall pay for the use of said school fund the highest rate of interest on current balances." The bond in controversy was given under this act, and its payment is resisted by the sureties because, 1. The contract was not binding as to the excess of interest over the legal rate, and 2. That the bank was entitled to deduct a commission of one per cent. upon the amount of money received and paid out while acting as treasurer. Neither position is tenable. The contract for more than six per cent. was legal because authorized by the supplement. The bank or broker who should bid "the highest rate of interest on current balances," was to be selected as treasurer. The act does not restrict the bid to the legal rate of interest. The object was evidently to give the custody of the money to the bank or broker who should bid the

highest for its use, evidently overlooking the fact that so far as money is concerned the highest bidder is not always the best. There is nothing in the supplement of 1870 allowing a commission to the treasurer. No reference to it was made by the bank in its bid. It was evidently not in the contemplation of the parties at the time the contract was made. The commission allowed by the Act of 1869 was not to exceed one per centum. The rate therefore would have been a subject of agreement even were commissions allowed under the supplement of 1870, and would naturally have been included in the bid. It does not appear there or elsewhere in the contract of the parties, and we think was properly disallowed.

We see no error in this record, and the judgment therefore must be affirmed.